## Sawyer v. Kenan.

Simmons, C. J.—The action being for the recovery of certain calves, and the evidence for the plaintiff at most only showing that the defendant's agent by mistake marked one or more calves belonging to the plaintiff in the defendant's mark, and it being further shown that after this had been done the calf or calves so marked remained in the plaintiff's possession, and there being no evidence that any of the calves sued for were ever thereafter taken posses-

sion of or converted by the defendant to his own use, the ver-·
dict in the plaintiff's favor was entirely without evidence to sup-
port it, and therefore contrary to law.          *Judgment reversed.*
February 5, 1895.

Complaint in trover.    Before Judge FALLIGANT.    Mc-·
Intosh superior court.    March 1, 1894.

The suit was for the recovery of six head of calves,.
which it was alleged the defendant marked in his own
mark and branded in his own brand.    The jury found.
for the plaintiff, and defendant's motion on the general
grounds for a new trial was overruled.

The evidence for plaintiff Kenan was, in brief: He
owns cattle on Sapelo Island.    In the spring of 1888 he·
went there to see about the marking of his cattle.    This·
was after the marking of defendant's cattle.    Frank
Sawyer told Kenan he had marked six of Kenan's
calves, and that if Kenan would not tell Frank's brother,
the defendant, Frank would give Kenan two for one.  .
Kenan saw four of his calves marked in defendant's
mark on Kenan's pasture; he did not know the color,
nor whether they were bulls or heifers, but they were·
following and sucking Kenan's cows.    He did not ac-
cept Frank Sawyer's offer.    There were then a large·
number of Sawyer's cattle in pasture.    Kenan sold all'
his cattle to Fulton for $10 a head, and the reason he
charged $10 a head for these six calves was because he·
sold all his other cattle to Fulton at that rate, and would
have gotten $10 apiece for them if they had been with
the others.    The last Kenan saw of the calves, they were·
on his pasture.    Gardner, Kenan's overseer on the island,.
saw six of Kenan's calves in Kenan's pasture marked in
defendant's mark.    He did not know what year it was,
but it was the same year "we" did the marking and
Sawyer shipped cattle to Savannah.    Gardner heard
Frank Sawyer offer Kenan two calves for one.    Kenan
had at that time about 300 head of cattle on the island.:

Cattle are seldom lost on the island from bogging or disease. The last Gardner saw of the calves, they were in Kenan's pasture. It was just after Frank Sawyer marked them when Kenan came and "we" marked. Sawyer shipped cattle to Savannah. A lot of his cattle fed on Kenan's pasture. Gardner did not know the color, nor whether the calves were heifers or bulls. Kenan's son was on the island in 1888, and saw several of his father's calves marked in Sawyer's mark.

For defendant the testimony was in brief: Frank Sawyer had nothing to do with the marking of Kenan's calves. He told Kenan that a mistake had been made in marking in 1888, and that one of his calves and one of Mrs. Wylly's had been marked; and offered to settle with him for the same; the other was settled for with Mrs. Wylly. Frank Sawyer was agent for defendant. He shipped calves to Savannah in 1886, and got $6 a head for them; they are worth from five to six dollars a head. He did not ship any of Kenan's cattle, does not know of that having been done, and does not know what calves Kenan claims. Defendant was at the north during the time. Frank Sawyer never took possession of Kenan's calves; if he had, he would have known it in separating the calves from their mothers. He did not tell Kenan that he marked six and would give two for one. Jim Green assisted in marking Sawyer's cattle in 1888, and did not know of the marking of Kenan's calves, but heard Frank Sawyer make the statement to Kenan testified to by Sawyer. It was in the spring of 1888. Green superintended the marking of Sawyer's cattle that year, and was present whenever cattle were shipped to Savannah. They always penned before shipping, and could have told if they had shipped any of Kenan's. The calves would try to follow the mothers, and it would be difficult to separate them, and when in pen, would bellow for their mothers. Defendant's cattle often ranged

on Mrs. Spalding's pasture.　Kenan's pasture is between Mrs. Spalding's and that of defendant, and the public road runs through Kenan's pasture.　There is no fence between Mrs. Spalding's pasture and that of Kenan, and wherever the fence between Kenan and Sawyer crossed the public road there were gates placed.　In driving defendant's cattle from Mrs. Spalding's pasture, having to pass through Kenan's land to reach defendant's, there was some difficulty in driving through, the cattle separating.　To the knowledge of Roberts, a witness who helped to drive the cattle, none of Kenan's were marked, and he would have known whether they had any of Kenan's.　In shipping, Roberts put the last calf aboard belonging to Sawyer.　In driving through, all the calves with Sawyer's mark were gathered up.　Roberts shipped all the calves himself in 1888 and 1889, and they were all in Sawyer's mark.　Whenever Sawyer drove cattle, Jacob Green minded the gate between Sawyer's and Kenan's pastures to see that cattle belonging to any one else did not come in, and did not see any belonging to Kenan.　Frank Sawyer does not know what became of the calf of Kenan, which had been marked with defendant's mark, and did not take possession of it.

W. DER. BARCLAY and W. G. CHARLTON, for plaintiff in error.　LESTER & RAVENEL, C. L. LIVINGSTON and GIGNILLIAT & STUBBS, contra.